IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA

PINNACLE PROPERTIES, LLC,            )
                                     )
    Plaintiff/Counterclaim Defendant, )
                                     )
v.                                   )   Civ. Act. No.: 1:23-CV-198-TFM-MU
                                     )
GUARANTEED RATE, INC.,               )
                                     )
    Defendant/Counterclaim Plaintiff.  )

## MEMORANDUM OPINION AND ORDER

Pending before the Court are cross motions for summary judgment, Defendant Guaranteed Rate, Inc.'s Motion for Summary Judgment and Incorporated Brief in Support Thereof (Doc. 44, filed 05/20/24) and Plaintiff Pinnacle Properties, LLC's Motion for Summary Judgment and Memorandum Brief (Doc. 48, filed 06/05/24). Each party timely submitted their respective responses and replies. *See* Docs. 50, 51, 52, 53. Having considered the motions, responses, replies, evidentiary submissions in support of the motions, and relevant law, the Court finds both motions are due to be denied.

## I.     PARTIES AND JURISDICTION

Plaintiff/Counterclaim Defendant Pinnacle Properties, LLC ("Plaintiff" or "Pinnacle") seeks declaratory judgment and injunctive relief against Defendant Guaranteed Rate, Inc. ("Defendant" or "Guaranteed"). Guaranteed asserts four (4) counterclaims against Pinnacle. This Court has subject matter jurisdiction and venue over this matter pursuant to 28 U.S.C. § 1332.

The parties do not contest jurisdiction or venue, and the Court finds sufficient support exists for both.

## II. BACKGROUND

**A.     Factual Background**

On or around December 30, 2021, Pinnacle and Guaranteed entered into a commercial lease with Pinnacle as the lessor and Guaranteed as the lessee for a space in the Baypointe Shopping Center. *Id.* at 13. The lease term was for 36 months and terminated on December 31, 2024. *Id.* at 13-14. However, the lease contained a termination provision that also provided for a Termination Option:

> **LEASE TERMINATION**: Lease shall terminate on the 31st day of December 2024. Tenant shall have an ongoing right to terminate this Lease effective any time after the conclusion of the twelfth (12th) month of the Lease Term by providing Landlord with ninety (90) days prior written notice (the "Termination Option"). If Tenant exercises its Termination Option it shall simultaneously issue Landlord with a termination fee (the "Termination Fee") equal to three (3) month of Tenant's then in effect Gross Rent plus unamortized Landlord costs associated with this Lease. This option shall be reciprocal in nature.

Doc. 48-2 at 19. Guaranteed paid rent pursuant to the lease until January 20, 2023, when it sent a letter via overnight delivery giving notice that it was exercising the Termination Option. Doc. 48-1 at 6. In that notice, Guaranteed provided:

> Guaranteed Rate, Inc. ("Guaranteed Rate") hereby provides Lessor, with this formal, ninety (90) day written notice of termination in connection with the above referenced Premises without further notice, notwithstanding anything contained in the Lease by-between the parties. The Termination Date shall be April 24, 2023 and rent shall be prorated as of that date.
>
> Pursuant to the Lease, enclosed is an early termination payment ("Termination Fee") equal to three (3) months' gross rent plus unamortized Landlord costs.

Doc. 48-2. Despite the letter indicating as such, no Termination Fee was included. Doc. 48-1 at 6. In addition to the letter, Guaranteed emailed Pinnacle via remgr@jbplaw.com on January 23, 2023 with a copy of the Termination Notice and a separate request for unamortized expenses. Doc. 44-1 at 20. Defendant did not receive a response to the email and sent a follow-up email on January

31, 2023, asking Plaintiff to confirm receipt and advise on the unamortized costs. Doc. 44-1 at 23. Defendant sent another follow up email on February 10, 2023, again asking Plaintiff to confirm the unamortized costs amount. Doc. 44-1 at 25. On February 13, 2023, Plaintiff advised that the Termination Notice had been "forwarded . . . to the owner ([who] is out of town this week)" and that Plaintiff would provide the unamortized costs amount "as soon as [it had] confirmation of the amount." Doc. 44-1 at 27. Plaintiff also asked Defendant if there was "anything we can do to keep your location." *Id.* Defendant responded that "termination is simply the result of employees relocating and we simply do not need the space anymore, so there are no adjustments that would change these plans unfortunately." *Id.* at 30. After still not receiving the amount of amortized costs from Plaintiff, Defendant sent another follow up email on February 24, 2023. *Id.* at 34. Plaintiff was also attempting to negotiate a new lease with local employees Shannon Reville and Joe Mosley. *See* Doc. 44-2. Those discussions ultimately ended with the employees informing Mr. Pittman on February 24, 2023, that they were "stuck with having to move" and that they "have movers scheduled for March 23." Doc. 42-2 at 32.

On March 7, 2023, after still not hearing from Plaintiff as to the amount of amortized costs, Defendant sent another email requesting the amount of the unamortized costs. *Id.* at 38. On March 20, 2023, Plaintiff sent a letter to Defendant. *Id.* at 42; Doc. 48-2 at 44. The letter did not provide the unamortized costs, but rather informed Defendant that its Termination Notice was invalid and demanded that Defendant continue making the monthly lease payments. Doc. 44-1 at 42; Doc. 48-2 at 44. On March 29, 2023, Defendant sent an email to Plaintiff in response to the letter, noting that "[its] attempts to obtain confirmation of the termination fee from [Plaintiff] went unanswered for some time, and [it has] yet to obtain a confirmation of the amount owed for termination of the lease" and therefore could not issue the fee simultaneously with the notice. Doc.

44-1 at 45.  Defendant again requested the amount of unamortized costs.  *Id.*  Plaintiff did not respond.  *Id.* at 5.  On March 31, 2023, Defendant sent another follow up email to Plaintiff noting that "it still requires a confirmation of the fee amount to proceed with any payment."  *Id.*  at 47.  Plaintiff did not respond.  *Id.* at 5.  On April 3, 2023, Defendant sent a check to Plaintiff in the amount of $13,089.36, representing the rent due under the termination provision in the lease.  *Id.* at 49; Doc. 48-2 at 47.  Tracking information indicates that Plaintiff received the check on April 7, 2023.  Doc. 44-1 at 6.

Defendant vacated the property by April 24, 2023.  Doc. 48-1 at 12.  Plaintiff never provided or confirmed the amount of the termination fee in response to Defendant's requests.  Doc. 17 at 3.  On April 25, 2023, Plaintiff mailed the check back to Defendant and reiterated that Defendant's Termination Notice was invalid and contended that the lease remains in effect until December 31, 2024.  Doc. 48-2 at 43.

> The notice provision in the lease provides:
>
> Any notice, demand, communication, or election to exercise any option hereunder, whether intended for the Lessor or for the Lessee, shall be in writing, and may be served or delivered in person, or by prepaid U.S. Registered or Certified mail, or by overnight courier service, to the address of the party intended as the recipient thereof as such address is herein stated, or to such other address as the parties hereto may at any time, and from time to time, designate in writing, (and as to notice to Lessor, a copy thereof shall be mailed or delivered to the Agent).

Doc. 44-1 at 11.  The lease also contains a non-waiver provision.  The non-waiver provision provides:

> **LESSOR'S RIGHTS CUMULATIVE:** The failure of the Lessor to insist, in any one or more instances, upon a strict performance of any of the covenants of this lease, or to exercise any option herein contained, shall not be construed as a waiver, or a relinquishment for the future, of such covenant or option, but the same shall continue and remain in full force and effect.  The receipt by the Lessor of rent, with knowledge of the breach of any covenant hereof, shall not be deemed a waiver of such breach, and no waiver by the Lessor of any provision hereof shall be deemed to have been made unless expressed in writing, and signed by the Lessor, or agent.

*Id.* at 12.

The parties dispute whether Guaranteed's exercise of the Termination Option was effective. On May 20, 2024, Guaranteed filed its motion for summary judgment. Doc. 44. On June 5, 2024, Pinnacle filed its motion for summary judgment. Doc. 48. Both parties assert that they are entitled to summary judgment in their favor on all of their respective claims, and Guaranteed asserts that it is entitled to summary judgment on all claims asserted against it. Pinnacle's motion for summary judgment does not address Guaranteed's counterclaims.

**B. Procedural Background**

Pinnacle originally filed this action on April 20, 2023, in the Circuit Court of Baldwin County requesting a declaratory judgment (Count I) and injunctive relief (Count II) relating to a commercial lease of property located in Baldwin County. *See* Doc. 1-1. Guaranteed timely removed this action to this Court on May 26, 2023.

On September 14, 2023, Guaranteed filed its counterclaim against Pinnacle, which includes four counts. Doc. 17. Count I asserts a breach of contract claim for Pinnacle's refusal to provide the amount of unamortized Landlord costs and refusal to accept Guaranteed's termination. *Id.* at 5. Count II asserts a breach of the covenant of good faith and fair dealing, alleging that Pinnacle failed to act in good faith by "refus[ing] to provide or confirm the amount of the termination fee [and] interfer[ing] with Defendant's ability to exercise its termination right in the Lease[.]" *Id.* at 6. Count III asserts a claim of wantonness, alleging that "Plaintiff knowingly rejected Defendant's termination and breached its duty to act in good faith, knowing that its actions would cause Defendant harm and in attempt to extract additional sums of money from Defendant that it was not entitled to under the lease. *Id*. at 6-7. Count IV asserts a claim for declaratory judgment,

requesting that the Court find Defendant exercised its right to terminate the lease by providing written notice of its intent to terminate the lease. *Id.* at 7.

### III. STANDARD OF REVIEW

"The Court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A factual dispute alone is not enough to defeat a properly pled motion for summary judgment; only the existence of a genuine issue of material fact will preclude a grant of summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48, 106 S. Ct. 2505, 2510, 91 L. Ed. 2d 202 (1986). "[T]he substantive law will identify which facts are material." *Id.* at 248, 106 S. Ct. at 2510. At the summary judgment stage, the court does not "weigh the evidence and determine the truth of the matter," but solely "determine[s] whether there is a genuine issue for trial." *Id.* at 249, 106 S. Ct. at 2511. The "evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in [her] favor." *Tipton v. Bergrohr GMBH-Siegen*, 965 F.2d 994, 999 (11th Cir. 1992) (internal citations and quotations omitted). An issue is genuine if the evidence is such that a reasonable jury could return a verdict for the non-moving party. *Mize v. Jefferson City Bd. of Educ.*, 93 F.3d 739, 742 (11th Cir. 1996) (citing *Hairston v. Gainesville Sun Publ'g Co.*, 9 F.3d 913, 918 (11th Cir. 1993)). For factual issues to be considered genuine, they must have a real basis in the record. *Id.*

The party asking for summary judgment bears the initial burden of showing the material fact that should be decided at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 2552, 91 L. Ed. 2d 265 (1986)). The movant can meet this burden by presenting evidence showing there is no dispute of material fact, or by showing the non-moving party has failed to present evidence in support of some element of its case on which it bears the ultimate burden of proof. *Id.*

at 322-23, 106 S. Ct. at 2552. A party must support its assertion that there is no genuine issue of material fact by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations…admissions, interrogatory answers, or other materials" or by "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." FED. R. CIV. P. 56(c)(1). The admissibility of evidence is subject to the same standards and rules that govern admissibility of evidence at trial. *Clemons v. Dougherty County,* 684 F.2d 1365, 1369 n.5 (11th Cir. 1982) (citing *Pan-Islamic Trade Corp. v. Exxon Corp.*, 632 F.2d 539, 556 (5th Cir. 1980).

"When a moving party has discharged its burden, the non-moving party must then go beyond the pleadings, and by its own affidavits, or by depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." *Jeffery v. Sarasota White Sox, Inc.*, 64 F.3d 590, 593-94 (11th Cir. 1995) (internal quotations omitted)(citing *Celotex*, 477 U.S. at 324, 106 S. Ct. at 2553). The court must view facts and draw all reasonable inferences in favor of the non-moving party. *Moore v. Reese*, 637 F.3d 1220, 1231 (11th Cir. 2011) (citing *Rosario v. Am. Corrective Counseling Servs., Inc.*, 506 F.3d 1039, 1043 (11th Cir. 2007)). However, to avoid summary judgment, the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. V. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S. Ct. 1348, 1356, 89 L. Ed. 2d 538 (1986) (citations omitted). Conclusory assertions, unsupported by specific facts, presented in affidavits opposing the motion for summary judgment are likely insufficient to defeat a proper motion for summary judgment. *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888, 110 S. Ct. 3177, 3188, 111 L. Ed. 2d 695 (1990).

Finally, Fed. R. Civ. P. 56(e) also provides that "[i]f a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may: (1) give an opportunity to properly support or address the fact; (2) consider the fact undisputed for purposes of the motion; (3) grant summary judgment if the motion and supporting materials—including the facts considered undisputed—show that the movant is entitled to it; or (4) issue any other appropriate order." FED. R. CIV. P. 56(e).

## IV.   DISCUSSION AND ANALYSIS

At the center of this dispute is the early termination provision, and whether Guaranteed substantially complied with the provision under Alabama law so as to warrant its enforcement, or whether Guaranteed's failure to include the termination fee simultaneously with the termination notice moots the notice. Plaintiff moves the Court to grant summary judgment on its claim for declaratory judgment that Defendant's attempts to exercise the early termination option were defective, and that the lease remains in effect until property terminated or until it expires. Plaintiff also moves the Court to grant injunctive relief requiring Defendant to comply with the lease terms until it is properly terminated, or it expires. As noted below, the injunctive relief claim is now moot because the lease term expired in December 2024. Defendant moves the Court to grant summary judgment in its favor on Plaintiff's declaratory judgment and injunctive relief claims. Defendant also moves the Court to grant summary judgment as to its counterclaims for breach of contract, breach of the covenant of good faith and fair dealing, wantonness, and declaratory judgment that Defendant properly exercised its rights under the early termination option by providing notice to Plaintiff and submitting a check for $13,089.36.

In a diversity action, Alabama's substantive law governs the interpretation of the contract at issue. *Employers Mut. Cas. Co. v. Mallard*, 309 F.3d 1305, 1307 (11th Cir. 2002) (Citations omitted); *see also SCI Liquidating Corp. v. Hartford Fire Ins.*, 181 F.3d 1210, 1214 (11th Cir. 1999) (applying Georgia law to contract interpretation in a diversity case).

Under Alabama law, the core principle of contract interpretation is so "practical" and "well known as to require no citation of precedent." *Stacey v. Saunders*, 437 So. 2d 1230, 1234 (Ala. 1983). Specifically, that "[a] written agreement is unambiguous and will be enforced (if otherwise enforceable) where the intent of the parties can be fairly and reasonably gleaned from the four corners of the document." *Id.* (quoting Schmidt v. Ladner Construction Co., Inc., 370 So. 2d 970 (Ala. 1979)). "[T]he intent of the contracting parties is discerned from the whole of the contract." *Homes of Legend, Inc. v. McCollough*, 776 So.2d 741, 746 (Ala. 2000) (citing *Loerch v. Nat'l Bank of Commerce of Birmingham*, 624 So. 2d 552, 553 (Ala. 1993)). Unless there is indication the terms are used in a special or technical sense, they will be given their "ordinary, plain, and natural meaning." *Id.* If the terms are unambiguous, then the court will enforce the contract as written. *Id.* If the terms are ambiguous (susceptible of more than one reasonable meaning), then the court must use established rules of contract construction. *Id.* (citations omitted). "Last, if all other rules of contract construction fail to resolve the ambiguity, then, under the rule of contra proferentem, any ambiguity must be construed against the drafter of the contract." *Id.* (citation omitted).

Lease agreements are contracts; thus, "general principles of contract construction apply in ascertaining the scope and meaning of a lease agreement." *Hardin v. Kirkland Enters., Inc.*, 939 So. 2d 40, 44 (Ala. Civ. App. 2006) (quoting *Bowdoin Square, L.L.C. v. Winn-Dixie Montgomery, Inc.*, 873 So. 2d 1091, 1098 (Ala. 2003)). Accordingly, when a lease is reduced to writing, the

provisions of the writing are conclusive and govern the rights of the parties. *Bowdoin Square*, 873 So. 2d at 1098. Moreover, where there is more than one writing involved in a transaction, the court interprets the writings together so that a harmonious operation can be given to each. *ANCO TV Cable Co. v. Vista Commc'ns Ltd. P'ship I*, 631 So. 2d 860, 864 (Ala. 1993); *see also Haddox v. First Alabama Bank of Montgomery, N.A.*, 449 So. 2d 1226 (Ala. 1984) (citing *Cole v. Yearwood*, 241 Ala. 437, 3 So. 2d 1 (1941) (stating "two or more instruments executed contemporaneously by the same parties in reference to the same subject matter constitute one contract and should be read together in construing the contract.").

Additionally, under Alabama law, waiver is generally a question of fact, which must be decided by a jury. A court may determine the issue of waiver if only one reasonable inference can be drawn from the evidence; otherwise waiver is not typically a question of law. *See McMillan, Ltd. v. Warrior Drilling & Eng'g Co.*, 512 So.2d 14, 38 (Ala. 1986) ("Nevertheless, the viability of each of these defenses is a factual determination that must be left to the trier of fact unless only one reasonable inference can be drawn from the evidence.") (citations omitted).

**A.      Declaratory Judgment Claims**

A declaratory judgment serves the function of enabling parties to obtain a judicial determination of their legal rights related to an actual controversy between them in advance of an invasion of such rights and whether further relief is or could be claimed. *Hudson v. Ivey*, No. SC-2022-0836, 383 So. 3d 636, 640 (Ala. 2023) (citation omitted). The Alabama Supreme Court stated:

> We also have recognized that one of the purposes of the Declaratory Judgment Act is to render practical help in ending a controversy that has *yet to reach the stage where legal relief is immediately available* and to enable parties between whom an actual controversy exists or those between whom litigation is inevitable to have the issues speedily determined when a speedy determination would prevent unnecessary injury caused by the delay of ordinary judicial proceedings. Stated

>    another way, declaratory-judgment actions are designed to set controversies to rest before they lead to repudiation of obligations, invasion of rights, and the commission of wrongs. A declaratory-judgment action requires only that there be a bona fide justiciable controversy.

*Harper v. Brown, Stagner, Richardson, Inc.*, 873 So. 2d 220, 224 (Ala. 2003) (internal citations omitted and emphasis in original). The controversy must be "definite and concrete," must be "real and substantial," and must seek relief by asserting a claim opposed to the interest of another party "upon the state of facts which *must have accrued*." *Baldwin County v. Bay Minette,* 854 So. 2d 42, 45 (Ala. 2003) (citation omitted and emphasis in original). "Declaratory judgment proceedings will not lie for an anticipated controversy." *Creola Land Dev., Inc. v. Bentbrooke Housing, L.L.C.*, 828 So. 2d 285, 288 (Ala. 2002) (quotation omitted).

Here, the parties assert opposing claims for declaratory judgment, and each claim that they are entitled to summary judgment on their respective claims.  Plaintiff "seeks declaratory judgment that Guaranteed's attempt to exercise its Termination Option is invalid and that the rent obligation continues through the end of the three (3) year term of the lease agreement (until December 31, 2024) or until the Termination Option is properly exercised."  Doc. 48 at 11.  Plaintiff argues that the terms of the Termination Option are plain and unambiguous that the Termination Option is only effective if the termination fee is simultaneously issued with the written notice, and because Guaranteed did not issue the notice and check simultaneously, the notice was insufficient to terminate the lease.  *Id.* at 11-12.  Defendant counters that it is entitled to summary judgment on Plaintiff's declaratory judgment claim because Plaintiff's own bad faith frustrated Defendant's efforts and rendered it impossible for Defendant to tender a check for the unamortized costs with the termination notice because Plaintiff refused to ever provide the amount of unamortized costs. Doc. 44 at 11-12.  Defendant also argues that it is entitled to summary judgment on its counterclaim for declaratory judgment.  Defendant seeks a declaration that it properly exercised its rights under

the Termination Provision and has fulfilled its obligations under the Lease by providing notice to Plaintiff of the termination and later submitting a check to Plaintiff for $13,089.36. *Id.* at 19.

While Plaintiff is correct that the language unambiguously states that Defendant was to simultaneously issue the termination fee with the termination notice, the Court's analysis does not end there. Defendant argues that it could not have simultaneously issued the fee because, despite requesting the unamortized costs from Plaintiff on several occasions, Plaintiff never provided those costs. Plaintiff ignores the fact that, in order to issue the fee, Plaintiff needed to provide the unamortized costs to Defendant. Defendant requested that Plaintiff provide it with the unamortized costs on six separate occasions, Plaintiff did not provide the costs to Plaintiff.

The parties dispute whether Defendant's method of requesting the unamortized costs via email was appropriate, and whether the non-waiver provision, read in tandem with the notice provision in the lease, required Defendant to send any request for the unamortized costs via mail. Waiver, as previously noted, is a question of fact that cannot be resolved on summary judgment. *See McMillan*, 512 So.2d at 38. Though this case would be a bench trial, the Court is unable to resolve this issue by dispositive motion and must do it in a manner where the Court may make findings of fact.

Accordingly, both parties' motions for summary judgment on their respective declaratory judgment claims are **DENIED**.

**B.      Pinnacle's Injunctive Relief Claim**

Plaintiff contends that it is entitled to "Preliminary and Permanent Positive Injunction ordering Guaranteed Rate to comply with all terms of the Lease for the remainder of the Lease and for any other relief which the Court deems proper." Doc. 1-1 at 8; Doc. 48 at 13. This lease expired on December 31, 2024. Thus, Plaintiff's claim for preliminary and permanent injunction

is moot because the lease term is over.  Accordingly, both Motions for Summary Judgment are **DENIED as MOOT** as to the injunction, as it relates to the rest of the lease.

C.      **Guaranteed's Breach of Covenant of Good Faith and Fair Dealing Claim**

Defendant also moves the Court to grant summary judgment in its favor on its counterclaim for breach of the covenant of good faith and fair dealing.  Defendant asserts that Plaintiff breached the covenant of good faith and fair dealing by refusing to provide the amount of unamortized costs.  Doc. 44 at 16.  Plaintiff counters that this counter claim is "without merit" because Guaranteed's termination notice "was defective the moment it overnighted the Termination Notice without the Termination Fee . . ..." Doc. 50 at 16.  Plaintiff further counters that it is Guaranteed, not Pinnacle, who has violated the covenant of good faith and fair dealing.  *Id.*

Alabama recognizes "the general rule that every contract carries with it an implied-in-law duty of good faith and fair dealing." *Hilley v. Allstate Ins. Co.*, 562 So. 2d 184, 190 (Ala. 1990).  "This duty provides that neither party will interfere with the rights of the others to receive the benefits of the agreement." *Id.*  However, it is well-established in Alabama law that there is no cause of action for breach of the implied duty of good faith and fair dealing.  *See Tanner v. Church's Fried Chicken, Inc.*, 582 So. 2d 449, 452 (Ala. 1991) ("This Court has clearly and specifically held that a duty of good faith in connection with a contract is directive, not remedial, and that therefore an action will not lie for breach of such a duty."); *see also Gov't St. Lumber Co. v. AmSouth Bank, N.A.*, 553 So. 2d 68, 72 (Ala. 1989) (holding that there was no independent cause of action in Alabama for a breach of the duty of good faith and fair dealing).  A breach of the duty of good faith and fair dealing instead can be considered under a breach of contract argument.

Accordingly, Guaranteed's motion for summary judgment in favor of its counterclaim for breach of the covenant of good faith and fair dealing is due to be **DENIED**. The claim is considered subsumed under the breach of contract claim.

### D.  Guaranteed's Breach of Contract Claim

Finally, Defendant argues that it is entitled to summary judgment in favor of its breach of contract claim. Doc. 44 at 14. Specifically, Defendant asserts that "Plaintiff breached the Lease by failing to provide Defendant the amount of the unamortized costs" and that "Defendant was ready, willing, and able to tender payment to Plaintiff for the unamortized costs" but Plaintiff prevented Defendant from doing so by refusing to disclose the amount. *Id.* at 15.

Plaintiff counters that the plain and unambiguous terms of the termination option required Defendant to provide a termination notice and termination fee simultaneously, and Defendant failed to do so. Rather, Plaintiff claims that Defendant is the one who breached the lease agreement because it did not include the termination fee with the termination notice. Doc. 50 at 9. Plaintiff further argues that Defendant could have requested the unamortized costs before sending the termination notice, and then it could have simultaneously sent the termination fee and the termination notice. *Id.* at 10. Plaintiff also argues that Defendant's requests for the unamortized costs should have been sent pursuant to the notice provision in the lease, rather than via email to Plaintiff's real estate manager, and that Defendant's failure to follow the notice provision, essentially, did not require Plaintiff to respond to the request. *Id.* at 11-12. Finally, Plaintiff argues that the non-waiver provision read in tandem with the notice provision in the lease required Defendant to send any request for the unamortized costs via mail.

To prevail on a breach of contract claim under Alabama law, a party must establish: (1) the existence of a valid contract binding the parties in the action, (2) its own performance under the

contract, (3) the [other party's] non-performance, and (4) damages. *Ex parte American Heritage Life Ins. Co.*, 46 So.3d 474, 477 (Ala. 2010) (citing *Congress Life Ins. Co. v. Barstow*, 799 So. 2d 931, 937 (Ala. 2001)); *Shaffer v. Regions Fin. Corp.*, 29 So. 3d 872, 880 (Ala. 2009) (quoting *Reynolds Metals Co. v. Hill*, 825 So.2d 100, 105 (Ala. 2002)).

Further, "there is an implied covenant that neither party [to a contract] shall do anything which will have the effect of destroying or injuring the rights of the other party to receive the fruits of the contract" and "[e]very contract imposes upon each party a duty of good faith and fair dealing in its performance and its enforcement." *Hunter v. Wilshire Credit Corp.*, 927 So. 2d 810, 813 n. 5 (Ala. 2005) (quoting *Lloyd Noland Found., Inc. v. City of Fairfield Healthcare Auth.*, 837 So. 2d 253, 267 (Ala. 2002)).

First, the Court notes that Plaintiff's assertion that Defendant breached the lease by failing to include the termination fee with the termination notice is inaccurate. Defendant had no duty to exercise the termination option—it was an *option* with no obligation to perform. Therefore, it cannot amount to a breach of contract. *See Ex parte American Heritage Life Ins. Co.*, 46 So.3d 474, 477 (Ala. 2010) (citing *Congress Life Ins. Co. v. Barstow*, 799 So. 2d 931, 937 (Ala. 2001)) (explaining the requirements to prevail on a breach of contract claim under Alabama law). As Defendant notes, its exercise of the provision can either be effective or ineffective, but it cannot constitute a breach.

Second, as previously noted, Alabama law recognizes an implied duty of good faith and fair dealing in every contract. "This duty provides that neither party will interfere with the rights of the others to receive the benefits of the agreement." *Hilley*, 562 So. 2d at 190. Plaintiff told Defendant via email that it would provide the unamortized costs as soon as it could confirm them, but Plaintiff never provided such costs. Plaintiff communicated via email with Defendant and

employees of Defendant regarding the termination on numerous occasions, without indicating that it believed the termination notice was ineffective. Plaintiff did not inform Defendant that it believed Defendant's termination notice was ineffective until March 20, 2023, almost two months after receiving the notice and after it become clear that Defendant was not going to renegotiate the lease. Despite informing Defendant that the termination notice was ineffective because it was not accompanied by the termination fee, Plaintiff never provided the amount of said termination fee to Defendant. To put it simply, given the above facts, the Court has questions in this case as to whether Plaintiff has fulfilled its implied duty of good faith and fair dealing related to Defendants right to exercise the termination option.

Regardless of these concerns, the parties dispute whether Plaintiff waived strict compliance with the notice provision as it pertains to termination and the unamortized costs. This question of fact must be resolved before the Court can rule on the breach of contract claim. Thus, summary judgment is inappropriate and Defendant's motion for summary judgment is due to be **DENIED** as to its breach of contract counterclaim.

E.   **Guaranteed's Wantonness Claim**

Defendant also moves the Court to grant summary judgment in its favor on its counterclaim for wantonness. However,

> Alabama law "does not recognize a tort-like cause of action for the breach of a duty created by a contract." *McClung*, 2012 U.S. Dist. LEXIS 63834, 2012 WL 1642209, at *7, citing *Blake*, 845 F. Supp. 2d at 1210. "[A] negligent failure to perform a contract . . . is but a breach of the contract." *McClung*, 2012 U.S. Dist. LEXIS 63834, 2012 WL 1642209, at *7, quoting *Blake*, 845 F. Supp. 2d at 1210; *see also Barber v. Bus. Prods. Ctr., Inc.*, 677 So. 2d 223, 228 (Ala. 1996), overruled on other grounds by *White Sands Grp., LLC v. PRS II, LLC*, 32 So. 3d 5 (Ala. 2009) ("a mere failure to perform a contractual obligation is not a tort"). "A tort claim can only be asserted when the duty of reasonable care, which one owes to another in the course of day-to-day affairs, has been breached and causes personal injury or property damages." *McClung*, 2012 U.S. Dist. LEXIS 63834, 2012 WL 1642209, at *7 (citing *Blake*, 845 F. Supp. 2d at 1209-10).

*Buckentin v. SunTrust Morg. Corp.*, 928 F. Supp. 2d 1273, 1289-90 (N.D. Ala. 2013); *see also TFO, Inc. v. Vantiv, Inc.*, Civ. Act. No. 1:16-cv-00971-SGC, 2017 WL 1196851, 2017 U.S. Dist. LEXIS 48508, at *7 (N.D. Ala. Mar. 31, 2017) (finding *Buckentin* persuasive and dismissing plaintiff's claim for wantonness because it arose out of the breach of contract claim).

Accordingly, because the conduct surrounding Guaranteed's wantonness claim is covered by the parties' contractual duties, Guaranteed's motion for summary judgment in favor of its wantonness claim is due to be **DENIED** as it is tied to the breach of contract claim which was previously denied summary judgment.

### V. CONCLUSION

Accordingly, Defendant's Motion for Summary Judgment (Doc. 44) and Plaintiff's Motion for Summary Judgment (Doc. 48) are both **DENIED**. The injunctive relief claim is **DISMISSED as MOOT**. This matter will be set for a bench trial, which will address both parties' declaratory judgment claims, Defendant's breach of contract counterclaim, and any damages.

**DONE** and **ORDERED** this the 6th day of March 2025.

/s/ Terry F. Moorer
TERRY F. MOORER
UNITED STATES DISTRICT JUDGE